# United States Court of Appeals
## For the First Circuit

No. 03-2345

MIGDALIA GONZÁLEZ-DE BLASINI,

Plaintiff, Appellant,

v.

FAMILY DEPARTMENT, as an agency of the Commonwealth
of Puerto Rico; YOLANDA ZAYAS, Secretary of the
Family Department in her official capacity and personal
capacity; VICTOR MALDONADO, Human Resources Director,
in his official and personal capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Howard, Circuit Judges.

Godwin Aldarondo-Girald, with whom Aldarondo-Girald Law Office
was on brief, for appellant.
Camelia Fernández-Romeu, Assistant Solicitor General, with
whom Roberto J. Sánchez-Ramos, Solicitor General, and Kenneth
Pamias-Velázquez, Deputy Solicitor General, were on brief, for
appellees.

August 2, 2004

**TORRUELLA**, **Circuit Judge**. Plaintiff-appellant Migdalia González de Blasini ("González") appeals from an order of the district court granting co-defendants Yolanda Zayas's ("Zayas") and Víctor Maldonado's ("Maldonado") motion for summary judgment. We affirm.

## I. Factual Background

We review the entry of summary judgment on all claims de novo, viewing the facts in the light most favorable to the party opposing summary judgment, in this case González. Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 185 (1st Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

González is a member of the New Progressive Party ("NPP"), which was the political party in power in Puerto Rico before the 2000 general elections. After the elections, a new administration under the Popular Democratic Party ("PDP") assumed control of the government. Both defendants are members of the PDP. At all relevant times, Zayas was the Secretary of the Family Department of the Commonwealth of Puerto Rico ("Family Department"), and Maldonado was its Human Resources Director. Following the change in administration, the Family Department

conducted an audit of its Human Resources Office covering personnel transactions from July 1, 1998, through December 31, 2000.

González began working for the Family Department in 1972. As of January 1993, she held a career position classified as Local Service Director I. On January 22, 1993, González was promoted to the trust position of Regional Director III. During her time in the trust position, the position of Local Service Director I was eliminated and replaced by the position of Director of Integral Services I. González occupied her trust position into 2000. On June 21, 2000, González requested reinstatement to a career position pursuant to the Puerto Rico Personnel Act (the "Personnel Act"), 3 P.R. Laws Ann. §§ 1301-1431.[1]

In a memorandum dated July 20, 2000, the Family Department's Human Resources Office stated that the position of Executive Director I was most similar to the position of Director of Integral Services I which was presently occupied. Notwithstanding the memorandum's finding, on September 1, 2000, the Executive Secretary of the Family Department reinstated González to a career position as Executive Director IV, which, as its designation suggests, provides greater compensation and involves more responsibility than Executive Director I.

---

[1] Under the Personnel Act, a career employee who accepts a trust position has an absolute right to be reinstated to a career position equal to the last position she held as a career employee. See 3 P.R. Laws Ann. § 1350(a).

According to the complaint, beginning in January 2001, González began receiving less work and responsibility. She also overheard co-workers make what she deemed to be derogatory comments about her. On February 2, 2001, González met with Zayas to discuss her situation at work. Zayas informed González that she had been improperly reinstated to the Executive Director IV position and that she would have to be placed in a different position. Zayas also allegedly told González that she needed González's position for "an employee of her trust." Zayas ordered González to vacate her office and exhaust any accumulated vacation leave. González went on vacation for ten days. When she returned, she was not immediately assigned a new office or duties. After several days, she met with Maldonado, the Human Resources Manager. Maldonado informed González that she would be transferred to the career position of Executive Director I because she had been improperly promoted to Executive Director IV. The demotion was made retroactive to September 1, 2000. On April 4, 2001, González began working in the Executive Director I position. On April 21, 2001, González's request for early retirement was approved.

González filed the present complaint against the Family Department seeking monetary damages. She alleged violations under 42 U.S.C. §§ 1981, 1983, and 1986 of the First, Fifth and Fourteenth Amendments to the United States Constitution as well as Article II, §§ 1, 6, and 7 of the Constitution of the Commonwealth

of Puerto Rico. González alleged that she had a property right protected under the due process clause of the Fourteenth Amendment to her career position as Executive Director IV, and that defendants unconstitutionally discriminated against her on the basis of her political affiliation in violation of the First Amendment.[2]

On May 1, 2003, Zayas and Maldonado filed a motion for summary judgment and the district court granted the motion for summary judgment, mooted the remaining motions, and dismissed all claims against Zayas and Maldonado. This appeal followed.

## II. **Analysis**

### A. **The Political Discrimination Claim**

When alleging a claim of political discrimination, a plaintiff bears the burden of producing sufficient evidence, whether direct or circumstantial, that she engaged in constitutionally protected conduct and that political affiliation

---

[2] On June 14, 2002, the Family Department filed a motion to dismiss, arguing that it was entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution. The district court granted the motion and dismissed the complaint against the Family Department and Zayas and Maldonado in their official capacities on November 21, 2002. This appeal was filed on September 2, 2003. In her appellate brief, González argued that the Family Department did not have sovereign immunity pursuant to the Eleventh Amendment. As defendants pointed out at oral argument, we do not have jurisdiction to review the partial judgment because the time to appeal has expired. See Fed. R. App. P. 4(a)(1)(A)(stating that, in a civil case, the notice of appeal must be filed with the district court clerk within 30 days of the date when the judgment is entered).

was a substantial or motivating factor behind the challenged employment action. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Cosme-Rosado v. Serrano-Rodríguez, 360 F.3d 42, 47 (1st Cir. 2004). The plaintiff must point "to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)(quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)(internal quotations omitted)).

The district court found that González failed to provide any evidence that establishes a genuine issue of material fact as to whether her political affiliation was a substantial or motivating factor behind the alleged adverse employment action. In the view of the district court, González did not even establish that her political affiliation was known to the defendants.

We agree with the district court that González has not met the burden of showing that her political affiliation was a substantial or motivating factor for the challenged employment action. González has adduced no evidence that the defendants knew she was a member of the NPP. She attempts to bolster her political discrimination cause of action by alleging that Zayas and Maldonado must have been aware of her political affiliation because she was a well-known supporter of the NPP in the community, had held a

-6-

previous trust position under the NPP administration, and was allegedly demoted shortly after the PDP assumed power. González points to Zayas's statement that she wanted González's office and position to go to an employee of her trust as indication of a causal link between her political beliefs and the change in her employment conditions.

This evidence is insufficient to show that political affiliation was a substantial factor in the challenged employment action. Compare Cosme-Rosado, 360 F.3d at 48 (finding that the mayor's stated intention to "rid the town of NPP activists" was not enough to show that political affiliation was motive) with Padilla-García v. Rodríguez, 212 F.3d 69, 75-76 (1st Cir. 2000)(where evidence showed that defendants knew of plaintiffs' party affiliation, plaintiff was conspicuous party member and witnesses testified as to defendant's desire to humiliate plaintiff there was genuine issue of material fact to warrant denial of summary judgment). While "we recognize that a prima facie case for political discrimination may be built on circumstantial evidence," González has not generated "the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations." Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988). We therefore affirm the district court's dismissal of plaintiff's political discrimination claim.

**B.  The Due Process Claim**

González's second claim is that she has a constitutionally protected property right to her position as Executive Director IV and that she was deprived of this right without due process of law.  The district court held that González did not have a property interest in the Executive Director IV position because it was obtained in violation of Puerto Rico law. We agree.

Under the Fourteenth Amendment, a public employee who possesses a property interest in continued employment cannot be discharged without due process of law.  See Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003); Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000).  The Constitution does not create property interests; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); see also Santana, 342 F.3d at 23-24.  "In order to establish a constitutionally protected property interest, a plaintiff must demonstrate that she has a legally recognized expectation that she will retain her position . . . ." Santana, 342 F.3d at 24.

Under Puerto Rico law, career employees have a property interest in their continued employment. See Figueroa-Serrano, 221 F.3d at 6; Kauffman, 841 F.2d at 1173.  However, "public employees

hired for career positions in violation of the Puerto Rico Personnel Act, or agency regulations promulgated thereunder, may not claim property rights to continued expectations of employment because their career appointments are null and void ab initio." Kauffman, 841 F.2d at 1173; see also De Feliciano v. De Jesús, 873 F.2d 447, 452-55 (1st Cir. 1989). The Personnel Act sets up a merit system for career employees. See generally 3 P.R. Laws Ann. § 1333. Under this system, career employees must, among other requirements, pass a competitive examination to be eligible for appointment or promotion to a career position. See, e.g., Ramos-Meléndez v. Valdejully, 960 F.2d 4, 6 (1st Cir. 1992)(holding that, if the plaintiff held a career position to which he was appointed without taking a competitive examination, he held the position illegally). The issue before us, then, is whether González's appointment to the Executive Director IV position, after her tenure in the trust position ended, complied with Puerto Rico law.

In their motion for summary judgment, Zayas and Maldonado argued that the transfer violated the Personnel Act in two ways: (1) González had been improperly reinstated under Puerto Rico law which forbids any transfer of public service personnel two months prior to and two months after an election; and (2) González was improperly reinstated to a career position three levels higher than that to which she was entitled.

We agree with the district court's holding that González's reinstatement did not violate the ban on transfers of public service personnel two months prior to and two months after an election. See 3 P.R. Laws Ann. § 1337. González was reinstated to the Executive Director IV position on September 1, 2000, more than two months before the elections were held on November 6, 2000. The reinstatement on September 1, 2000, was therefore outside the prohibited period.

González's reinstatement to the position of Executive Director IV, however, did violate the Personnel Act. González was reinstated to a position higher than that to which she was entitled. She was entitled, under the statute, to reinstatement in a position equal to the one she last held as a career employee. See 3 P.R. Laws Ann. § 1350(a) (when a trust employee transfers back to a career position, she "shall have the absolute right to be reinstated in a regular [career] position equal to the last position she held while in the Career service . . . ."). While she was in a trust position from January 1993 to September 2000, González's original position was eliminated and eventually reclassified as Director of Integral Services I due to an amendment in Puerto Rico law. When González requested reinstatement to her career position in June 2000, Director of Integral Services I was occupied. A memorandum prepared by the Family Department's Human Resources Office on July 20, 2000, recommended that González be

reinstated to Executive Director I, because this position was the most similar to her last career position. Because Executive Director I was designated as equal to her prior career position, her property interest under Puerto Rico law was in the Executive Director I position. See Kauffman, 841 F.2d at 1173. Thus, González was entitled to reinstatement to Executive Director I, not Executive Director IV.[3] In order to be properly appointed to the Executive IV position, González had to be appointed pursuant to 3 P.R. Laws Ann. § 1334(2). See id. ("Transfers may be made from one position to another in the same class . . . provided the employee meets the requirements for the position to which [she] was transferred."). Under the Personnel Act, a transfer such as Gonzalez's is improper, and plaintiff has presented no evidence to create a genuine issue of material fact as to its legality. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) ("Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor.")(citing

---

[3] There is some uncertainty in the record regarding González's transfer to a trust position in October 2000 and subsequent reinstatement to the Executive Director IV position in December 2000. Because we find that González's original September 1, 2000 reinstatement to Executive Director IV was improper, any subsequent transfers would be tainted by the September reinstatement (at least during the period in question). We therefore need not reach the question of whether any subsequent transfers occurred.

<u>Celotex Corp</u> v. <u>Catrett</u>, 477 U.S. 317, 323 (1986)).  We therefore affirm the district court's order on these grounds.[4]

## C.  Scope of the Summary Judgment Record

At the same time they moved for summary judgment, defendants filed a motion requesting leave to accept the documents submitted in support of the motion for summary judgment in the Spanish language pursuant to Local Rule 108.[5]  González filed a motion in opposition to the filing of documents in support of motion for summary judgment, arguing that the documents were in Spanish and all but one did not involve or mention González.  She argues that the district court erred in accepting documents supporting defendants' motion for summary judgment filed in the Spanish language.  Defendants argue that it was within the district court's discretion to accept the documents in Spanish until English language translations were filed.  <u>See</u> D.P.R. R. 108.1.[6]

---

[4]  Further, because plaintiff has failed to establish a genuine issue of material fact as to whether defendants violated any of plaintiff's rights, we need not reach the issue of qualified immunity.  <u>See</u> <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 201 (2001)(stating that whether a constitutional violation occurred is the first step in the qualified immunity inquiry).

[5]  Local Rule 108.1 stated:

> All documents not in the English language which are presented or filed in this Court, whether evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, unless the court shall otherwise order.

[6]  This rule is now codified as Local Rule 43.  <u>See</u> D.P.R. R. 43.

-12-

It is well settled that "federal litigation in Puerto Rico [must] be conducted in English." Estades-Negroni v. Assocs. Corp. of N. Am., 359 F.3d 1, 2 (1st Cir. 2004). "In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials." Id.; see also United States v. Rivera-Rosario, 300 F.3d 1, 6 (1st Cir. 2002). A violation of the English language requirement "will constitute reversible error whenever the appellant can demonstrate that the untranslated evidence has the potential to affect the disposition of an issue raised on appeal." Rivera-Rosario, 300 F.3d at 10.

There was sufficient evidence in the record in English to sustain a finding that González was reinstated in violation of the Personnel Act. The evidence submitted in Spanish therefore does not affect the disposition of this case.

The main document in issue is the internal audit conducted by the Family Department. The record before the district court did not contain an English translation of the audit. An English translation of the audit does appear in the appendix to González's appellate brief. Since the audit did not appear in English on the record before the district court when it decided the motion for summary judgment, we cannot now take the English translation of this audit into account. See Estades-Negroni, 359 F.3d at 2. The memorandum prepared by the Family Department's

Human Resources Office on July 20, 2000, which was in the summary judgment record in an English translation, recommended that plaintiff be reinstated to Executive Director I, because Executive Director I was the most similar to plaintiff's last career position.

The district court should not have considered any documents before it that were in the Spanish language. Because there was sufficient evidence in the record in English to support the district court's holding that no genuine issue of material fact remained, however, we may affirm the judgment of the district court.

**D.  The State Claims**

González assigns error to the district court's dismissal without prejudice of her causes of action under Puerto Rico law when it issued a general order dismissing all claims. In its opinion and order, the district court discussed only González's federal claims. The district court then dismissed González's action with prejudice.

Under 28 U.S.C. § 1367, "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims under which it has original jurisdiction." 28 U.S.C. § 1367(c); see Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 2004 WL 1557905, *4 (1st Cir. July 13, 2004). We review a district court's decision not to exercise supplemental jurisdiction

-14-

for abuse of discretion. See Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co., 215 F.3d 195, 200 (1st Cir. 2000). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). To the extent that the federal action was dismissed with prejudice, we construe it as holding that González is at liberty to bring her unadjudicated claims before the Commonwealth courts, but her federal claims are forever barred. See 28 U.S.C. § 2106 (allowing appellate courts to modify judgments as may be just under the circumstances). We can discern no abuse of discretion in the district court's dismissal of the action after ruling against González on the federal claims.

### III.  Conclusion

For the reasons stated herein, we affirm the district court's grant of summary judgment for the defendants.

**Affirmed**.

**"Concurrence follows"**

-15-

**BOUDIN, <u>Chief Judge</u>, (Concurring in the judgment).** The panel opinion persuades me that the grant of summary judgment should be sustained. But my reservations as to certain of the quotations from, and glosses upon, two prior decisions dealing with the issue of Spanish language documents under 48 U.S.C. § 864 (2000) are so firm as to preclude an unqualified concurrence in the panel opinion.